UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

LONDELL LEE, JR.                           CIVIL ACTION NO. 07-1425

VERSUS                                     JUDGE WALTER

COCA-COLA ENTERPRISES, INC.                MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

**Introduction**

Londell Lee, Jr. ("Plaintiff") filed this employment discrimination action against his former employer, Coca-Cola Enterprises, Inc. ("Coca-Cola"). He alleges racial discrimination in violation of Title VII and other federal and state employment laws. Coca-Cola responded to the complaint with a Motion to Compel Arbitration (Doc. 3). Plaintiff opposes the motion on the grounds that the arbitration program adopted by Coca-Cola is not binding on Plaintiff.

**Relevant Facts**

On a motion to compel arbitration, the court may receive evidence and is to resolve the issue in an expeditious and summary fashion, with only restricted inquiry into factual issues. Marsh v. First USA Bank, N.A., 103 F.Supp.2d 909, 914 (N.D. Tex. 2000). Coca-Cola has presented affidavits and other documentary evidence, and Plaintiff has not contested any of that evidence. A summary of the facts presented by Coca-Cola's evidence is set forth below.

Rona White, a human resources manager for Coca-Cola, testifies that Plaintiff was employed by the company from 1985 until he was terminated in May 2006.  Plaintiff was employed in the company's Shreveport facility for the duration of his employment.

Coca-Cola calls its arbitration program the Solutions Program.  Melanie Lewis testifies that she has served as the Solutions Program director since October 2002.  The program has been gradually implemented in various portions of the company's business territory.  Ms. Lewis coordinated the October 15, 2004 implementation of the Solutions Program for Coca-Cola's employees in its Shreveport facility.

Coca-Cola sent a letter, about two weeks before the implementation date, to all Shreveport employees, including Plaintiff, at the home address that each employee had provided to Coca-Cola.  The letter touted the Solutions program and stated that Coca-Cola "has adopted Solutions as the exclusive means of resolving workplace conflict and will be implementing the program in stages across the company."  The letter added, "Effective October 15, 2004, all Coca-Cola Enterprises employees working in ... Shreveport ... agree to resolve all legal claims and other workplace conflicts through Solutions rather than through court."  The employees were asked to review an enclosed brochure and summary description of the Solutions Program, and they were told that a series of briefings would be held in the coming weeks to explain the program in person.

The letter sent to all employees included a brochure.  That brochure, under the heading "Our Mutual Commitment," states that the company "has adopted Solutions as the exclusive

means of resolving workplace conflicts."  The brochure then states:  "This means the Company and all employees who accept or continue employment with the Company agree to resolve all legal claims against the Company or any employee through Solutions rather than through court."

Also included with the letter was a copy of a summary of the Solutions Program. Under the heading "Mutual Commitment," the document provides as follows:

> The Company is committed to resolve any Legal Disputes or other conflicts with an Employee through Solutions rather than through court. Similarly, *by accepting or continuing employment with the Company after the Effective Date of the program, you agree to use Solutions to resolve any Legal Disputes* or other Conflicts with the Company or an employee through Solutions rather than through court. (Emphasis added.)

A few days before the effective date of the Solutions Program in Shreveport, Coca-Cola conducted orientation sessions in Shreveport.  Each employee who attended the orientation sessions, including Plaintiff, received a copy of the Solutions Program plan document, a document that addressed frequently asked questions about the program, and a copy of a PowerPoint presentation that was presented during the orientation.  The Solutions Program document states that it is effective October 15, 2004, and it defines employee as "any person who is or has been employed by the Company in the Gulf States area on or after the Effective Date ... ."  Under the Application and Coverage provisions, the document states that the Program "applies to and binds the Company, each employee" and their heirs or assigns.

The Solutions Program plan document that was given to Plaintiff at the orientation provides, under the heading Assent, as follows: "Employment or *continued employment after the Effective Date of this Program constitutes consent by both the Employee and the Company to be bound by this Program*, both during the employment and after termination of employment." (Emphasis added.) The Consideration provision of the Program states that consideration to employees includes continued employment after the Effective Date.  The Frequently Asked Questions document includes the question:  "Will employees be expected to sign an agreement to use the Solutions options?"  The answer states that current employees "are not being asked to sign an agreement" but new employees will sign an agreement at the time they are hired.  The answer also states that Solutions is a new company policy that provides "the rules by which we govern ourselves."

Ms. Lewis testifies that employees who attended the orientation session were shown a video in which the narrator stated that "by accepting or continuing employment with the Company, we all agree to resolve workplace issues using Solutions."  A sign-in sheet was used to record employee attendance at the orientation sessions.  A copy of the sign-in sheet reflects a signature next to Plaintiff's typed name. Plaintiff has not denied that it is his signature on the sign-in sheet or that he attended the orientation.

**Analysis**

Plaintiff's sole basis for opposing arbitration is an argument that his signature on the sign-in sheet at the orientation meeting is insufficient to create a contractual agreement to

arbitrate.  Plaintiff does not challenge the lawfulness of the terms of the arbitration agreement or that his employment discrimination claims would fall within the scope of that agreement.

Plaintiff's argument focuses on the sign-in sheet, which implies that he contends that only his writing is relevant to whether he consented to the arbitration agreement.  That is not correct.  Louisiana Civil Code Art. 1927, which governs consent to contracts, provides: "Unless the law prescribes a certain formality for the intended contract, offer and acceptance may be made orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent."  Despite that provision, a district judge recently denied a motion to compel arbitration because she interpreted Louisiana law to require consent to an arbitration agreement be in writing.  The Fifth Circuit reversed that decision, observing: "Louisiana state courts recognize that contract law does not require written acceptance of an arbitration agreement."  Marino v. Dillard's, Inc., 413 F.3d 530 (5th Cir. 2005).

The Marino case arose when the employer asked each employee to sign an "Acknowledgment of Receipt of Rules for Arbitration" that included a statement that employees were deemed to agree to the arbitration terms by virtue of continuing employment with the company.  The employee did thereafter continue his employment.  The Fifth Circuit did not expressly state that the employee's actions evidenced consent, but it did reverse the district court's denial of the motion to compel arbitration and remand the case for further proceedings.  The district court, immediately after the case was returned to it, entered an order directing arbitration.

The Fifth Circuit faced a similar issue in <u>May v. Higbee Company</u>, 372 F.2d 757 (5th Cir. 2004), a case that was governed by Mississippi law.  As does Louisiana law, Mississippi law provides that a party's conduct may manifest assent to an agreement.  The employee in <u>May</u> received two documents from her employer.  The first was titled "Rules of Arbitration" and the second was a one-page form titled "Acknowledgment of Receipt of Rules for Arbitration."  The acknowledgment form included language that employees were "deemed to have agreed to the provisions of the Rules by virtue of accepting employment with the Company and/or continuing employment therewith."  Above the signature line on the document was the statement:  "I acknowledge receipt of the agreement to arbitrate certain claims and rules of arbitration."  Plaintiff admitted that she signed the form.

The district judge in <u>May</u> denied a motion to compel arbitration, finding that there was no agreement to arbitrate because the employee never assented to be bound by the company's arbitration procedures.  The Fifth Circuit reversed.  It explained that the *signature* on the acknowledgment form was not the basis for a finding of consent. Rather, the acknowledgment form merely put the employee on notice that her continued employment would constitute assent.  It was the employee's *conduct* in continuing her employment that evidenced her consent and bound her to arbitrate.  The case was remanded for the entry of an order granting the motion to compel arbitration.

Plaintiff, as did the employee in <u>May</u>, focuses his attention on the document he signed and an argument that the document is not sufficient to consent to arbitration.  There is no

requirement, however, that Plaintiff have ever signed any document to be bound by the terms by the arbitration agreement.  The Fifth Circuit explained in <u>Marino</u> that Louisiana law does not require written acceptance of an arbitration agreement and that action or inaction by the employee may bind him if it is clearly indicative of consent.  This point is emphasized in <u>Omni Hotels Management Corp. v. Bayer</u>, 235 Fed. Appx. 208 (5th Cir. 2007), a case in which employees were provided a copy of an arbitration agreement that stated that continued employment was predicated on the employee's agreement to arbitrate and that continued employment provided consideration for the agreement. The employees were also given a receipt that they were requested to sign as proof of notice. Several employees refused to sign, in some cases writing "refused" on the receipt, but they continued to work for the company. The district court ordered all of the employees to arbitrate because their continued employment evidenced their consent to the arbitration agreement. The Fifth Circuit affirmed, with the observation: "The district court was correct that the employees were bound by the agreement under Louisiana law even if they refused to sign it[.]" <u>Omni Hotels</u>, 235 Fed. Appx. at 211.

Plaintiff's signature on the sign-in sheet is important only because it is a piece of evidence that Plaintiff was notified in certain terms that his continued employment would constitute his consent to the Solutions Program.  There is plentiful other evidence found in the affidavits and documents submitted by Coca-Cola that Plaintiff received such notice, and it is undisputed that Plaintiff continued his employment.  The unchallenged evidence

establishes that Plaintiff consented to arbitration when he continued his employment with Coca-Cola after being told that continued employment would constitute consent to the arbitration agreement.

**Remedy**

The record establishes that Coca-Cola's Motion to Compel should be granted.  The next question is whether to stay or dismiss the case.  The terms of 9 U.S.C. § 3 provide that a stay is mandatory upon a showing that the opposing party has commenced suit on an issue referable to arbitration under a written agreement, but this rule does not prevent a court from totally dismissing a case in the proper circumstances.  If "all issues raised in [an] action are arbitrable and must be submitted to arbitration, retaining jurisdiction and staying the action will serve no purpose."  Alford v. Dean Witter Rentals, Inc., 975 F.2d 1161, 1164 (5th Cir. 1992).  See also Fedmet Corp. v. M/V Buyalyk, 194 F.3d 674, 678 (5th Cir. 1999).[1]

Coca-Cola contends that all claims asserted by Plaintiff in his complaint are required to be arbitrated under the terms of the agreement, and Plaintiff has not disputed the scope of the arbitration agreement.  There is, therefore, no reason for this court to retain jurisdiction over the case.  Coca-Cola asks that the complaint be dismissed with prejudice, and Plaintiff states in the conclusion of his memorandum that, should the court grant the Motion to Compel Arbitration, he would not oppose a dismissal with prejudice.  The undersigned is

---

[1]  Merely staying the case, even when there is nothing left to do in the district court and the matter is administratively closed, likely precludes any appeal. South Louisiana Cement, Inc. v. Van Aalst Bulk Handling, B.V., 383 F.3d 297 (5th Cir. 2004).

concerned, however, that a dismissal with prejudice could provide Coca-Cola with a res judicata defense that would bar Plaintiff from obtaining relief through arbitration or otherwise.  The better course is to dismiss this civil action without prejudice to the right of Plaintiff to pursue his claims in arbitration.

Accordingly;

**IT IS RECOMMENDED** that the Motion to Compel Arbitration (Doc. 3) be granted by the entry of a judgment that provides as follows:  The parties are ordered to submit to and participate in an arbitration in accordance with the terms and provisions of the Solutions Program, of all claims asserted in this civil action, which civil action is dismissed without prejudice to the right of Plaintiff to pursue the claims in arbitration.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within ten (10) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that

party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 4th day of March, 2008.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE